## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARISA HICKSON,

                Plaintiff,                Case No. 2:25-cv-10719

v.                                 Hon. Brandy R. McMillion
                                 United States District Judge

FORD MOTOR COMPANY,

                Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF NO. 9)

Plaintiff Maria Hickson ("Plaintiff" or "Hickson") brought this employment discrimination action against Defendant, Ford Motor Company ("Defendant," "Ford," or "the Company") based on alleged age discrimination and retaliation she faced in violation of the Age Discrimination in Employment Act ("ADEA"), Elliott-Larsen Civil Rights Act ("ELCRA"), and public policy under Michigan law. *See generally* ECF No. 8. Plaintiff filed her original complaint on March 14, 2025, *see* ECF No. 1, and her First Amended Complaint ("FAC") on June 20, 2025, *see* ECF No. 8. Defendant now moves to dismiss the FAC. *See generally* ECF No. 9. The Motion has been adequately briefed, so the Court will rule based upon the record before it, in lieu of a hearing. *See* ECF No. 8-9, 11; E.D. Mich. LR 7.1(f)(2). For

the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART**
Defendant's Motion to Dismiss (ECF No. 9).

## I.

Hickson is a sixty-year-old Ford employee of nearly thirty-eight years.  ECF
No. 8, PageID.300-301.  She has served in various positions at the Company, such
as a developmental financial analyst, manager of business planning & financial
development, manager of HR global reengineering project, manager of national
employee service center, position manager of Ford Credit, senior manager of
Powertrain operations, and senior manager of air transportation, global travel &
security, & chairman's office.  *Id*. at PageID.306-312.  In 2002, Hickson gave birth
to her third child and took advantage the Company's Transitional Work Arrangement
Program, which allows employees to transition to part-time status.  *Id*. at
PageID.303.

Throughout her time at the Company, Hickson has been consistently regarded
as a high-performing employee, as evidenced by Company recognitions, merit
bonuses, and successful projects.  *See e.g.*, ECF No. 8, PageID.312 ("Hickson
received bonuses in large part driven by her performance."  This included earning a
2021 Top Achiever performance rating, where she earned a 125% percentage bonus,
which totaled $10,935.00); *id*. at PageID.307 ("Hickson managed a $56 million
global training budget that delivered 500 different courses for over 40,000

2

participants"); *id*. at PageID.309 ("Hickson provided HR leadership to 1,700 hourly and 170 salaried employees"); *id*. at PageID.310 ("In Hickson's 2019 Performance Evaluation (rated Achiever), Hickson's supervisor, Terri Faison wrote: Marisa is a strong HR professional with an amazing work ethic and dedication to the team[…]").

From 2017 through 2021, as further example, Hickson received a performance rating of either "achiever" or "top achiever" and earned at least 100% of her bonus. ECF No. 8, PageID.312. However, beginning in 2022, until 2024, her performance rating was either "no rating" or "below target." *Id*. at PageID.312. This led to her earning only 70-80% of her bonus. *Id*. According to Plaintiff, the stark decline can be easily explained: in September 2022, Ford began harassing her to retire. *Id*. at PageID.301. In October 2022, she declined to do so, and the harassment worsened. *Id*. In fact, she alleges, Ford has a long history of targeting long-term salaried employees like her, in hopes that they will retire. *Id*.

But according to Ford, this is not the case. *See generally* ECF No. 9. Rather, starting in 2022, Hickson's performance simply declined, which resulted in negative performance reviews and bonus reductions. *Id*. at PageID.365. Plaintiff and her new manager, Sherrie Winfield ("Winfield"), also began experiencing interpersonal conflicts. *Id*. Also in 2022, Hickson sought to have her work status changed from part-time back to full-time. ECF No. 8, PageID.303. Winfield initially refused, and

Plaintiff's full-time status was not restored until July 1, 2023, after she escalated the request. *Id.* at PageID.319. Even so, her status was only temporarily resorted; so on several more occasions thereafter, she met with Ford senior leadership, provided detailed requests to permanently restore her status, and experienced repeated denials. *Id.* To date, her full-time status has not yet been restored. ECF No. 8, PageID.343. The harassment also took the form of personal insults from Winfield, and the Company terminating her long-time colleague, Trudy Boland, *see id.* at PageID.301, 304. She has also unsuccessfully applied to over twenty transfer and/or promotional opportunities at the Company from February 13, 2023, to July 11, 2024. *Id.* at PageID.303.

As Winfield's harassment intensified, on March 1, 2023, Plaintiff met with Melanie Stinson ("Stinson") and Scott Britton ("Britton") for assistance. ECF No. 8, PageID.301-302. On March 10 and 13, 2023, she also met with a Ford People Matters representative—as recommended by Stinson and Britton—to report Winfield's behavior. *Id*. at PageID.302. During a People Matters meeting, the representative asked Hickson if she believed the harassment was related to her membership in a "protected class," and Hickson replied, "I was on the fence about retiring. I just wasn't ready. I wasn't ready to stop working. I don't know if she wanted me to retire. I don't know why she targets me." *Id*. at PageID.302.

Aside from the tensions with Winfield, on February 2, 2023, Plaintiff informed senior management about pressures she was facing by a UAW representative to approve profit-sharing credit payments. ECF No. 8, PageID.302. Plaintiff refused to authorize the payments, based on her understanding of a bargaining agreement between UAW and Ford. *Id*. She believed authorizing the payments would be in violation of Company policy and federal law. *Id.* at PageID.321-323. According to Plaintiff, her refusal resulted in further targeting by the Company, leading her to file another report with People Matters, this time as a whistleblower. *Id.* at PageID.302. She believes that her responsibilities related to issuing the credits were later revoked because she refused to engage in unlawful conduct. *Id.* at PageID.322-323. This, together with the several other forms of harassment and retaliation she experienced, forms the basis of her claims before the Court.

On October 15, 2023, Plaintiff filed an age and retaliation discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and she received her Right-To-Sue letter on July 22, 2024. *Id.* at PageID.305. On March 14, 2025, she filed her original complaint with the Court. *See generally* ECF No. 1. Defendant filed their initial Motion to Dismiss the Complaint on June 16, 2025. *See generally* ECF No. 6. After which, on June 5, 2025, the Court afforded Plaintiff an opportunity to file an amended complaint. *See* ECF No. 7. Plaintiff did so by filing

her FAC on June 20, 2025.  *See* ECF No. 8.  Thus, on June 24, 2025, the Court

accepted filing of the FAC (ECF No. 8) and denied without prejudice Defendant's

pending Motion to Dismiss (ECF No. 6).  Defendant now moves to dismiss the FAC,

having filed a renewed Motion to Dismiss on July 7, 2025.  *See generally* ECF No.

9.  Having reviewed the parties' briefs, the Court finds the Motion adequately

briefed, oral argument unnecessary, and will decide the Motion to Dismiss based on

the record before it.  *See* E.D. Mich. LR 7.1(f).

## II.

A plaintiff must file a complaint that is "plausible on its face."  *See City of*

*Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010) (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  In reviewing a 12(b)(6)

motion, the Court will assess whether a plaintiff's well-pleaded factual allegations

"allow[s] the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."  *Mattera v. Baffert*, 100 F.4th 734, 739 (6th Cir. 2024)

(alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

At this stage of the litigation, the Court must construe the complaint in the

light most favorable to the plaintiff.  *See Norris v. Stanley*, 73 F.4th 431, 435 (6th

Cir. 2023).  The Court must also "accept all of the complaint's factual allegations as

true and determine whether these facts sufficiently state a plausible claim for relief."

*Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Twombly*,

550 U.S. at 555-56).  Pleadings that are no more than legal conclusions are not entitled to the assumption of truth.  *See Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claim could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").  In doing so, the Court will only look to the four corners of a complaint, apart from "materials attached to a motion to dismiss if they are referred to in the complaint and central to the claim." *Berry v. United States Dep't of Lab.*, 832 F.3d 627, 637 (6th Cir. 2016).

## III.

### A.   AGE DISCRIMINATION IN VIOLATION OF ADEA AND ELCRA

#### i.  *ADEA*

Under the ADEA, employers are prohibited from "discriminating against an employee over the age of forty because of the employee's age." *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015).  To adequately allege discrimination, a plaintiff "must show that: (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." *Id*. at 462.  Plaintiff cites to *Keys v. Humana, Inc*., 684 F.3d 605, 609 (6th Cir 2012) for the proposition that she is "not required to plead facts supporting the elements of the *prima facie* case." *See*

ECF No. 11, PageID.626.  There, the Sixth Circuit instructed that a complaint "must allege sufficient 'factual content' from which a court, informed by its judicial experience and common sense, could draw the reasonable inference[.]"  *Keys*, 684 F.3d at 610 (cleaned up).  Here, Plaintiff has done so and the Court can draw such an inference.

Plaintiff satisfies the first two elements because she was over 40 years old at the time of the alleged discrimination and suffered several adverse employment actions such as hostile work environment pressuring her to retire; deprivation of full merit increases, transfer, and promotional opportunities; and fraudulent performance evaluations.  ECF No. 8, PageID.329-330.  As to the third element, the Court agrees with Plaintiff that her long and once-successful career of nearly four decades at Ford sufficiently shows she was qualified for the positions she held.  *See* ECF No. 8, PageID.347-348; *see also* ECF No. 11, PageID.627-628.  Finally, albeit admittedly bare, the FAC's assertion that similarly situated younger employees were treated differently than Plaintiff is enough to state a claim at this stage of the proceedings. ECF No. 8, PageID.347-348; *see also* ECF No. 11, PageID.629; *see also Southall v. Ford Motor Co.*, 645 F. Supp. 3d 826 (S.D. Ohio 2022) ("Southall says that Ross is 'substantially younger' than him […] On its own, this would simply be a recitation of a legal element. [. . .] But Southall also alleges that he was 73 at the time of his firing. […] Southall's advanced age, at least compared to the 'typical' retirement age

of 65, makes it plausible that Ross is substantially younger for purposes of an age discrimination suit. In other words, based on the Court's 'judicial experience and common sense,' […] the Court finds it plausible that Southall could meet this element of an age discrimination claim."). Although here, Plaintiff is sixty-years-old, the Court is currently satisfied with her allegation that the similarly situated employees were "substantially younger" than her, given the typical retirement age. ECF No. 8, PageID.347. Therefore, this claim (Count I) survives dismissal.[1]

### ii.    ELCRA

A key difference between an age discrimination claim under the ADEA and ELCRA is that the latter does not "impose[… an] age forty protected class limitation […] and does not require that an ELCRA plaintiff show replacement by a substantially younger employee." *Winter v. Fitness USA Health Spas Corp.-Flint/Lansing*, No. 188648, 1999 WL 33430030, at *2 (Mich. Ct. App. Nov. 12, 1999). "An ELCRA plaintiff need only show replacement by a younger individual." *Id*. It follows that the ELCRA requires a more lenient standard than the ADEA. Accordingly, having already declined to dismiss Plaintiff's ADEA claim, her ELCRA age discrimination claim (Count II) survives dismissal as well.

---

[1] The Court notes that while, at the pleading stage of the litigation, the age discrimination claims are allowed to proceed, at the summary judgment stage, the analysis may be different as the burden is higher.

**B.     HOSTILE WORK ENVIRONMENT**

Plaintiff next alleges Defendant created a hostile work environment ("HWE") based on her age and in violation of the ADEA and ELCRA.   ECF No. 8, PageID.334-341.   Defendant moves to dismiss these counts, arguing both fail for two reasons.   ECF No. 9, PageID.373.   First, the FAC does not connect Defendant's alleged conduct to Plaintiff's age, and second, because the allegations are insufficient to plead an "objectively intimidating, hostile, or offensive work environment."   *Id*.   Plaintiff rebuts that she connected the alleged harassment to her age by pleading Defendant targets its older, long-term employees.   ECF No. 11, PageID.631.   Further, she continues, the FAC pleads an objectively intimidating, hostile, or offensive work environment by providing several examples of her negative work experiences throughout the FAC.   ECF No. 11, PageID.631.   At the motion to dismiss stage, Plaintiff is correct.

*i.     ADEA*

To plead an ADEA prima facie claim of HWE, a plaintiff must allege, "she is 40 years old or older; was subjected to harassment, either through words or actions, based on age; the harassment had the effect of unreasonably interfering with [her] work performance and creating an objectively intimidating, hostile, or offensive work environment; and there exists some basis for liability on the part of the

employer." *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (cleaned up).

In the FAC, Plaintiff does exactly that.  ECF No. 8, PageID.334-341. Specifically, she alleges she was subject to a HWE when: her manager harassed her using words and actions and she faced humiliation as a result, her manager accused her of not completing tasks, she received falsified performance reviews, her manager interfered with her job transfer attempts and declined to give her full-time status, and her reputation at work was ruined.  ECF No. 8, PageID.336, 340.

According to Defendant, these allegations are insufficient because the FAC does not include facts alleging these actions were "intolerable" conditions based on Plaintiff's age.  ECF No. 9, PageID.373-374.  But Plaintiff is not required to provide examples of explicit references to her age for her HWE claim to survive dismissal. Much less is required; plaintiff need only plead enough facts to support an inference that her workplace conditions became severe enough to constitute an objectively intimidating, hostile, or offensive work environment based on her age.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  And here, her allegations of being targeted for retirement—in line with the company's historical

11

practice of doing so—suffice.  So, contrary to Defendant's assertion, the FAC satisfies this standard, and dismissal of the HWE claims would be improper.

### ii.    ELCRA

The test for a Michigan state claim of HWE mirror the federal standard.  *See Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 473-474 (6th Cir. 2012) ("Factors relevant to the [intimidating, hostile or offensive work environment] inquiry include: the frequency of the discriminatory conduct; the conduct's severity; whether the conduct was physically threatening or humiliating or merely an offensive utterance; and whether the conduct unreasonably interfered with the employee's work performance."); *see also Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009) ("ELCRA claims are analyzed under the same standards as federal ADEA claims."). Given Plaintiff's ADEA HWE claim has already survived dismissal, so, too, will her ELCRA claim.

Additionally, the FAC provides primarily verbal conduct to charge Defendant with subjecting Plaintiff to an HWE.  ECF No. 8, PageID.335-336, 338, 340.  Verbal conduct can create an HWE if it was "sufficiently severe or pervasive."  *Dale v. Cerberus Sec. LLC*, No. 1:25-CV-917, 2025 WL 3041819, at *5 (W.D. Mich. Oct. 31, 2025) (quoting *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)). So, this claim is sufficient, in part, because Plaintiff alleges her supervisor's actions "create[ed] so much stress for [her] that she required mental health services to deal

12

with the disruptive nature of [the] harassment." ECF No. 8, PageID.336. The Court

finds this to be enough to allege a severe and pervasive environment.

Consequently, Defendant's request to dismiss both of Plaintiff's HWE claims

(Counts III and IV) is denied.

## C.   RETALIATION

According to Plaintiff, Defendant also retaliated against her in violation of the

ADEA and ELCRA. ECF No. 8, PageID.342-346. To plead her ADEA claim, she

must allege facts sufficient to show "(1) that she engaged in a protected activity; (2)

that the defendant had knowledge of her protected conduct; (3) that the defendant

took an adverse employment action towards her; and (4) that there was a causal

connection between the protected activity and the adverse employment action."

*Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (cleaned up).

The ELCRA requires a similar standard, except for a higher bar for causation—that

"plaintiff's protected activity was a 'significant factor' in the employer's adverse

action." *Id.* at 527 (quoting *In re Rodriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007)).

In other words, Plaintiff "must present evidence sufficient to raise the inference that

[her] protected activity was the likely reason for the adverse action." *Id.* at 527-528.

The crux of Defendant's argument for dismissal of the retaliation claims is

Plaintiff's failure to allege a decision-maker's knowledge of her protected activity.

ECF No. 9, PageID.377-378. Rather, Plaintiff only pleads "Winfield and other

managers who could significantly impact Hickson's employment were fully aware that Hickson opposed a violation of her rights under the ADEA when she complained to HR or filed an EEOC charge."  ECF No. 8, PageID.342; *see also* ECF No. 8, PageID.344.  If Defendant's position is that Plaintiff must do more here than broadly state her superiors "were fully aware" of her People Matters complaints and EEOC charge, the Court finds that requirement is reserved for a different point of the case, such as summary judgment.  *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met.").

This "easily met" prima facie case equally applies to the "causal connection" element as well.  *See Nguyen*, 229 F.3d at 563 ("To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action.").  Plaintiff's causal connection allegations before the Court includes a timeline that supports a reasonable inference of adverse action resulting from her protected activity.  On March 10 and 13, 2023, for example, she met with a People Matters representative, and in 2024, she received a "below target" performance rating and 70% bonus.  ECF No. 8, PageID.302, 312. The performance rating and related bonus constituted an act *after* Plaintiff's protected activity; therefore, it is at least relevant to supporting the required

inference of an adverse employment action.  *See Spence v. Donahoe*, 515 F. App'x 561, 573 (6th Cir. 2013) (only acts occurring after the protected activity are relevant).  The ADEA claim of retaliation (Count V) will thus survive dismissal.

The Court's position is the same as to the ELCRA retaliation claim despite its higher standard for causation.  *See Mickey*, 516 F.3d at 527–28 (A retaliation claim under the ELCRA "requires showing that the plaintiff's protected activity was a 'significant factor' in the employer's adverse action and a plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action") (cleaned up).  The Court reiterates that Plaintiff need only plead enough to create an inference that her protected activity was a significant factor in the adverse employment actions she allegedly experienced.

To do so, she alleges, in part, that on March 1, 2023, she met with Stinson and Britton and complained about Winfield's harassment.  ECF No. 8, PageID.317. They then instructed her to file a formal complaint, and she did so on March 10th. *Id.*  Two months after filing her internal complaint, Plaintiff requested Winfield reinstate her full-time status and Winfield denied her request.  *Id.*  While temporal proximity alone may not be sufficient to prove a retaliation claim, Plaintiff's allegations are presently enough to defeat dismissal.  *See Mickey*, 516 F.3d at 525 ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is

significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."). Accordingly, Count VI survives.

## D.     FAILURE TO PROMOTE OR TRANSFER

Plaintiff next pleads two counts of denial of transfer and promotional opportunities—under the ADEA and ELCRA. ECF No. 8, PageID.348-351. Defendant moves the Court to dismiss these claims for Plaintiff's failure to adequately make her claims. ECF No. 9, PageID.380-381. To establish a failure to promote claim, Plaintiff must show "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). The Court has already found that Plaintiff adequately pled the first, second, and fourth elements. Concerning the third element, considering Plaintiff was not ultimately selected for any of the 24 positions to which she applied, *see* ECF No. 8, PageID.303, it is reasonable to assume she was considered for each and denied. Therefore, these two claims (Count VII and VIII) survive the request for dismissal.

## E.    VIOLATION OF PUBLIC POLICY

Finally, Defendant moves to dismiss Plaintiff's claim of adverse employment action under Michigan public policy because (1) she does not allege engaging in a protected activity, (2) the causal connection between her alleged protected activity and any adverse action is inadequate, and (3) she cannot demonstrate she suffered a qualifying adverse action.  ECF No. 9, PageID.381-385.  Plaintiff responds that she brings her public policy claim under Michigan's recognized relief for employees who "perform[ed] an action that public policy would encourage or refus[ed] to perform an action that public policy would condemn."  ECF No. 11, PageID.637-638.  Accordingly, she claims, it is well-plead based on her allegations that she refused to approve the profit-sharing credit payments because she believed doing so would violate federal law.  ECF No. 8, PageID.350-351.

The Michigan Supreme Court has long recognized a "public policy" exception to discharging at-will employees.  *See Suchodolski v. Michigan Consolidated Gas Co.*, 316 N.W.2d 710, 711-12 (Mich. 1982) (holding "some grounds for discharging an employee are so contrary to public policy as to be actionable[.]").  The general restrictions to discharge include: "(1) explicit legislative statements prohibiting the discharge of employees who exercise a statutory right or perform a statutory duty, *e.g.*, The Whistleblowers' Protection Act, MICH. COMP. LAWS § 15.362; (2) legislative statements of public policy that imply a cause of action for wrongful

termination, *e.g.*, refusal to violate a law in the course of employment; and (3) an implied public policy prohibition of a discharge in retaliation for an employee's exercise of a legislatively conferred right, e.g., filing of workers' compensation claims." *Wiskotoni v. Michigan National Bank–West*, 716 F.2d 378, 382 (6th Cir. 1983) (citing *Suchodolski*, 316 N.W.2d at 711-12)).

Plaintiff's claim attempts to broaden the public policy exception beyond its existing scope.  Inherent in the doctrine is the requirement that an employee was *discharged* for a protected activity, not merely that she experienced *any* adverse employment action.  Plaintiff has not provided any case law to support a more expansive application of the grounds that limit otherwise discharging at-will employees.  *See* ECF No. 8, PageID.350-351, *see also* ECF No. 11, PageID.637-641.  Nor has the Court, on its own, found support for Plaintiff's position.  In fact, the precedent Plaintiff herself relies on concerns "wrongful *termination* in violation of public policy[.]" *Janetsky v. Cnty. of Saginaw*, 2025 WL 2095369, at *6 (July 25, 2025) (emphasis added).  Meanwhile, Plaintiff has not been discharged; she is still employed by Ford and does not argue anything to the contrary.  ECF No. 8, PageID.300-301.  Plaintiff's Michigan public policy claim is therefore deficient and dismissed as a result.

**IV.**

Accordingly, Defendant's Motion to Dismiss (ECF No. 9) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS HEREBY ORDERED** that Plaintiff's Adverse Employment Action in Violation of Michigan Public Policy (Count IX) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's shall file an Answer as to all remaining claims (Counts I-VIII) on or before **February 3, 2026**.

**IT IS SO ORDERED.**

Dated: January 13, 2026                    s/Brandy R. McMillion
      Detroit, Michigan                    HON. BRANDY R. MCMILLION
                                        United States District Judge